# Third District Court of Appeal

## State of Florida

Opinion filed May 10, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-926
Lower Tribunal No. 13-10766
_____

**Kendall South Medical Center, Inc.,**
Appellant,

vs.

**Consolidated Insurance Nation, Inc., d/b/a Insurance Nation,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Antonio Marin, Judge.

Raul A. Montaner, for appellant.

Fowler White Burnett, P.A., and June Galkoski Hoffman and Rory Eric Jurman (Fort Lauderdale), for appellee.

Before ROTHENBERG, LAGOA and SCALES, JJ.

SCALES, J.

Kendall South Medical Center, Inc. ("Kendall South"), the plaintiff below, appeals a final order dismissing its Fourth Amended Complaint with prejudice for failure to state a cause of action against one of the defendants below, Consolidated Insurance Nation, Inc. d/b/a Insurance Nation ("Insurance Nation"). We have jurisdiction. See Fla. R. App. P. 9.110(k). Concluding that Kendall South has sufficiently stated a cause of action for negligent procurement of an insurance policy, we reverse.

### *Underlying Facts[1]*

Kendall South operates a medical center on leased premises located in North Miami Beach, Florida. On January 3, 2013, the sprinkler system on the leased premises was undergoing maintenance when a leak occurred, resulting in significant water damage to both the physical improvements (i.e., walls, flooring, baseboards) and to the contents (i.e., equipment and machinery) located therein. Kendall South had a commercial property insurance policy with Nation Insurance—issued in August 2011, and later renewed—which provided $100,000 of coverage for the physical improvements and contents of the subject property, and which contained a $1,000 deductible and a 90 percent coinsurance clause.[2] As

---

[1] The facts presented herein are taken from the underlying Fourth Amended Complaint.

[2] Generally speaking, a coinsurance provision in a policy covering real or personal property imposes a penalty upon an insured who purchases coverage that is far less than the full value of the covered property, such that the insurer does not pay the

a result of the sprinkler leak, Kendall South suffered property damaging totaling approximately $260,000. Kendall South made an insurance claim, purportedly expecting to receive a $100,000 payout, but received only $16,562.67 due to the policy's coinsurance clause.

In March 2013, Kendall South filed a negligence claim against the management company for the leased premises, Equity One Realty & Management, FL., Inc., which allegedly undertook the work on the sprinkler system. As an affirmative defense, the management company asserted that Kendall South had failed to maintain sufficient insurance on the subject premises in compliance with the parties' lease agreement. In April 2013, Kendall South filed an Amended Complaint, adding a negligence claim against Countryside Power Sweeping, Inc., which allegedly performed the work on the sprinkler system. The matter was

---

full amount of a covered loss:

> "Coinsurance" means a relative division of the risk between the insurer and the insured, dependent on the relative amount of the policy and the actual value of the property insured thereby.
> The purpose of coinsurance is to increase the risk to the insured when the insured purchases far less coverage than the full value of the property; when a coinsurance provision applies, the insurer does not pay the full amount of loss, but the amount otherwise payable under the policy is reduced in proportion to the extent to which the property is underinsured. In fact, properly considered, a coinsurance clause involves a penalty or partial forfeiture.

31 Fla. Jur. 2d Insurance § 2457 (2017) (footnotes omitted).

referred to mediation and later set for trial, which was rescheduled on numerous occasions.

Before the trial was held, on January 20, 2015, Kendall South was granted leave to file a Second Amended Complaint in order to add claims for negligent procurement of insurance and breach of fiduciary duty against Kendall South's insurer, Insurance Nation. The lower court then struck the pending trial date.[3] On February 26, 2015, Insurance Nation moved to dismiss the two claims against it, claiming that Kendall South had failed to state causes of action. The trial court agreed, dismissing the Second Amended Complaint without prejudice.

On July 31, 2015, Kendall South filed its Third Amended Complaint, again alleging a claim for negligent procurement of insurance against Insurance Nation, but dropping the claim for breach of fiduciary duty. Insurance Nation moved to dismiss the Third Amended Complaint, alleging that Kendall South had again failed to state a cause of action. The trial court agreed, dismissing the Third Amended Complaint without prejudice.

On November 18, 2015, Kendall South filed its Fourth Amended Complaint, once again alleging a claim for negligent procurement of insurance against Insurance Nation. In this pleading, Kendall South alleged that it had met with Insurance Nation's agent, Humberto Torres, on or about August 10, 2011, in order

---

[3] The claims against Equity One Realty & Management, FL., Inc. and Countryside Power Sweeping, Inc. remain pending in the lower court.

4

to obtain a "a commercial property coverage policy of insurance in the amount of $100,000[.]00 that would cover the property, equipment, supplies, and improvements" of Kendall South.

At this meeting, after informing the agent that the subject premises had "office equipment, supplies and furnishings in excess of $100,000.00 and that [Kendall South] had spent in excess of $100,000.00 for the buildouts, betterments or improvements" thereon, Kendall South "requested from [agent] Torres insurance coverage of $100,000.00 to cover the property, supplies, furnishings, betterments or improvements of Kendall South Medical Center, Inc." Thereupon, "Torres informed [Kendall South] that Defendant Insurance Nation would procure a commercial policy of insurance that would cover and protect all the property, equipment, furnishings and improvements of the Plaintiff Kendall South Medical Center, Inc., and as specifically requested by Plaintiff."

After Kendall South paid the premium for a policy that provided property damage coverage of $100,000 with a $1,000 deductible and a 90 percent coinsurance clause, "Defendant Insurance Nation by and through its agent Torres again assured plaintiff that the policy procured by Defendant Insurance Nation would cover and fully pay the amount of $100,000[.]00 that was requested by Plaintiff." Kendall South renewed the policy under the same terms in August 2012. As a result of the sprinkler leak in January 2013, Kendall South's premises

5

purportedly suffered property damage in excess of $260,000. The subject policy, however, provided coverage in the amount of only $16,562.67 as a result of a penalty imposed by the coinsurance clause.

Kendall South specifically alleged that Insurance Nation "had the duty to procure the insurance coverage as requested," as well as a "duty of reasonable care in . . . properly explaining the policy of insurance procured on [Kendall South's] behalf." This duty was allegedly breached when the agent "failed to advise and or inform and or adequately and or properly explain to [Kendall South] the 90% coinsurance clause" where the agent "knew or should have known that the policy written by [Insurance Nation] with the 90% coinsurance clause would not cover and pay [Kendall South's] property as requested by [Kendall South] in the event" of a covered claim.

Insurance Nation moved to dismiss the Fourth Amended Complaint, once again alleging that Kendall South had failed to allege a claim for negligent procurement of insurance. Insurance Nation asserted, in pertinent part that: (i) it "explained this policy, including the coinsurance requirements, to Kendall South in the same way that Insurance Nation always explains similar policies to its customers as a matter of custom and practice"; (ii) "[b]y procuring and explaining the insurance requested by Kendall South, Insurance Nation met its duty"; and (iii) "Kendall South is attempting to manufacture a broker's liability claim against

6

Insurance Nation despite 1) receiving the insurance it requested; and 2) never specifically asking for a higher level of insurance given the value of its office equipment."

This time the trial court dismissed the Fourth Amended Complaint with prejudice. For the following reasons, we conclude the trial court erred in finding that the Fourth Amended Complaint failed to adequately allege a claim for negligent procurement of insurance.

### *Analysis*

"A motion to dismiss tests whether a cause of action is stated and requires the court to look only to the four corners of the complaint without considering any affirmative defenses raised by the defendant, or evidence likely to be produced by either side." Martin v. Principal Mut. Life Ins. Co., 557 So. 2d 128, 128-29 (Fla. 3d DCA 1990). To this end, the trial court must treat as true all of the complaint's well-pleaded allegations and consider them in the light most favorable to the plaintiff. Siegle v. Progressive Consumers Ins. Co., 819 So. 2d 732, 734-35 (Fla. 2002). The trial court's dismissal for failure to state a cause of action is an issue of law subject to *de novo* review. Id. at 734.

It is well settled that "where an insurance agent or broker undertakes to obtain insurance coverage for another person and fails to do so, he may be held liable for resulting damages for . . . negligence." Klonis ex rel. Consol. Am. Ins.

7

Co. v. Armstrong, 436 So. 2d 213, 216 (Fla. 1st DCA 1983); see also Romo v. Amedex Ins. Co., 930 So. 2d 643, 653-54 (Fla. 3d DCA 2006) (concluding the insured had stated a valid cause of action for negligent procurement of insurance); Caplan v. La Chance, 219 So. 2d 89, 90 (Fla. 3d DCA 1969) (concluding that an "action charging [insurance agents] with negligence in failing to procure the proper coverage requested by the insured . . . is a recognized cause of action"). More specifically, and as applicable here, "[a]n agent is required to use reasonable skill and diligence, and liability may result from a negligent failure to obtain coverage which is specifically requested or clearly warranted by the insured's expressed needs." Warehouse Foods, Inc. v. Corporate Risk Mgmt. Servs., Inc., 530 So. 2d 422, 423 (Fla. 1st DCA 1988). As explained by our sister court, "[t]his general duty requires the agent to exercise due care in correctly advising the insured of the existence and availability of particular insurance, including the availability and desirability of obtaining higher limits, depending on the scope of the agents undertaking." Adams v. Aetna Cas. & Sur. Co., 574 So. 2d 1142, 1155 (Fla. 1st DCA 1991).

Viewing the allegations of the Fourth Amended Complaint as true and in a light most favorable to Kendall South, we conclude the allegations sufficiently state a cause of action for negligent procurement of insurance. Kendall South asserts that, once it informed Insurance Nation's agent: (i) that both the physical

8

contents of the subject premises and the improvements thereon were each valued in excess of $100,000, and (ii) that it wanted to procure just $100,000 of insurance with respect thereto, it was incumbent upon the agent to apprise Kendall South of the effect of the coinsurance clause, and to explain that different coverage was required to meet Kendall South's expectations.

In short, Kendall South alleges, albeit somewhat inartfully, that liability arises here from the agent's negligent failure to advise Kendall South at the August 10, 2011 meeting that the procured policy was inadequate to address Kendall South's expressed insurance needs. At this stage of the proceedings, on these allegations, we agree that Kendall South has stated a valid cause of action for negligent procurement of insurance.[4]

In reaching this decision, we do not at all imply that an agent or broker has a general duty of knowing and/or valuing the contents and improvements of the

_____

[4] As already noted, Insurance Nation argued in its motion to dismiss that its agent did "explain[] this policy, including the coinsurance requirements, to Kendall South in the same way that Insurance Nation always explains similar policies to its customers as a matter of custom and practice," and that this conduct satisfied its duty of care. This, of course, is a matter for later consideration, whether it be raised on a motion for summary judgment or at trial. Similarly, Insurance Nation's argument that Kendall South made only general requests for "full" or "adequate" coverage at the August 2011 meeting presents a potential factual issue that cannot be resolved on a dismissal motion. See Commercial Ins. Consultants, Inc. v. Frenz Enters., 696 So. 2d 871, 872 (Fla. 5th DCA 1997) (concluding that whether there has been a failure to procure insurance is ordinarily a question of fact). We express no opinion as to the efficacy of these arguments at this time.

premises either before procuring, or thereafter renewing, a commercial insurance policy. Nor, given the current state of the pleadings, is this a case where it has been alleged by the plaintiff that an agent or broker has a general duty to explain a coinsurance clause to any insured before issuing such a policy. Rather, when an insured alleges that it specifically communicated its insurance needs to an agent who then undertook to procure a policy addressing such needs, the insured states a cause of action for negligent procurement where it also alleges that, without providing an explanation that different coverage was required, the agent procured a policy not meeting those expressed needs.

Accordingly, we reverse the final order dismissing with prejudice Kendall South's Fourth Amended Complaint against Insurance Nation and remand this cause for further proceedings.

Reversed and remanded.